IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEPHEN BERNARD JONES, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:12-CV-789-Y |
| | § | |
| WILLIAM STEPHENS, Director,[1] | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for a writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Stephen Bernard Jones, TDCJ-ID #1469808, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ) in Gatesville, Texas.

Respondent William Stephens is the Director of the TDCJ.

---

[1] Effective June 1, 2003, William Stephens succeeded Rick Thaler as the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Director Stephens "is automatically substituted as a party." FED. R. CIV. P. 25(d).

## C. FACTUAL AND PROCEDURAL HISTORY

In February 2007, petitioner was charged in two indictments with six counts of making a false statement to obtain property or credit of more than $200,000 in Tarrant County, Texas, cause numbers 1054498R and 1054601R. (01SHR at 133; 02SHR at 133)[2]  On August 29, 2007, in Criminal District Court Number Three a jury found petitioner guilty on all counts, petitioner pleaded true to habitual offender notices in the indictments, and the jury assessed his punishment at 45 years' confinement on each count, the sentences to run concurrently. (01SHR at 135; 02SHR at 135) Petitioner appealed his convictions, and the Second District Court of Appeals of Texas vacated the convictions under the second and third counts of each judgment on double jeopardy grounds and affirmed the trial court judgments as modified. (01SHR at 137-49; 02SHR at 138-50) *Jones v. State*, 285 S.W.3d 501 (Tex. App.–Fort Worth 2009). The Texas Court of Criminal Appeals vacated the Second Court of Appeals's judgment on the double jeopardy issue, and remanded the case. *Jones v. State,* 323 S.W.3d 885 (Tex. Crim. App. 2010).  On remand, the Second Court of Appeals affirmed the trial court's judgments. (04SHR at 355-59)  Petitioner also filed six state habeas applications challenging his convictions, but the Texas Court of Criminal Appeals denied relief without written order.[3] (07SHR at cover; 08SHR at cover)

---

[2]"01SHR" refers to the state court record of petitioner's state habeas application no. WR-71,921-01; "02SHR" refers to the state court record of his state habeas application no. WR-71,921-02; "03SHR" refers to the state court record of his state habeas application no. WR-71,921-03; "04SHR" refers to the state court record of his state habeas application no. WR-71,921-04; "07SHR" refers to the state court record of his state habeas application no. WR-71,921-07; and "08SHR" refers to the state court record of his state habeas application no. WR-71,921-08.

[3]The first four state habeas applications were dismissed because petitioner's direct appeal was still pending.

The Second Court of Appeals set forth the factual background of the case as follows:

> Appellant was an employee of Legacy Financial Group, a mortgage company that helps prospective home owners navigate the mortgage loan process. Appellant submitted uniform residential loan applications for two separate residential properties, seeking loans in the amounts of $680,000 and $544,000. Appellant made false statements on the applications, stating that he owned two fictitious bank accounts. He also submitted another person's credit report as his own.

(01SHR at 138)

Petitioner explained his actions in a written "Confession" to law enforcement as follows:

> I committed the fraudulent acts to obtain properties to pay my bills. I am 2 months behind on my mortgage, 2 ½ months behind on my car notes and other bills. I was suppose [sic] to receive 50,000.00 dollars kickback to finance the deal @ 1019 Coye Meadow. I have worked so hard to acquire the things I have. I am truly sorry for everything. I offer my help with helping capture a[n] organized ring that has made millions from fraud. Please I need this one chance to turn this in for the good. My total commission since being @ Legacy Financial Group has been 2,000.00 in three months. My bills average 4,000 monthly. I know it was wrong. I have asked for help yet none came. Truly, truly, I am sorry. Again, please allow me to make this right.
>
> P.S. I did indeed cut & paste my name to a credit report to obtain credit for my own personal gain.

(RR,[4] vol. 7, binder 4 of 4, State's Ex. 13)

### D. Issues

Petitioner raises the following issues for relief:

(1)     Was he convicted under a version of a statute that did not provide criminal penalties for his actions at the time of the allegations, thereby negating the trial court's jurisdiction;

(2)     Was he denied a fundamentally fair trial through cumulative trial court errors;

---

[4]Portions of the reporter's record are omitted. *See* RR, vol. 4 (pgs. 37-48 and 53-60 are omitted).

(3)     Was he denied equal protection of law during voir dire; and

(4)     Was he denied effective assistance of counsel during his appeal?

(Pet. at 7-8)

### E.  RULE 5 STATEMENT

Respondent believes that petitioner has exhausted his state court remedies as to the issues

raised and that the petition is neither time-barred nor subject to the successive petition bar.  (Resp't

Ans. at 4)  28 U.S.C. §§ 2244(b), (d), 2254(b).

### F.  DISCUSSION

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a state court shall not be granted with respect to any claim that was adjudicated

on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to

clearly established federal law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court of the United States on a question of law or if the state court decides a case

differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

A state court decision will be an unreasonable application of clearly established federal law if it

correctly identifies the applicable rule but applies it unreasonably to the facts of the case.  *Williams*,

529 U.S. at 407-08.

4

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  This presumption not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001).  The applicant has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *See Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963); *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez*, 274 F.3d at 948 n.11; *Goodwin v. Johnson*, 132 F.3d 162, 183 (5th Cir. 1997).

### 1. Was Petitioner Convicted Under a Version of a Statute that Did Not Provide Criminal Penalties for his Actions at the Time of the Allegations, Thereby Negating the Trial Court's Jurisdiction.

Petitioner was charged with violating § 32.32(a) and (b) of the Texas Penal Code.  The version of § 32.32(a) and (b) in effect at the time of the offenses provided "[a] person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit for himself or another."  "Credit" included:

(1) a loan of money;
(2) furnishing property or service on credit;
(3) extending the due date of an obligation;
(4) comaking, endorsing, or guaranteeing a note or other instrument for obtaining credit;
(5) a line or letter of credit; and
(6) a credit card, as defined in Section 32.31.

*See* Act of Apr. 21, 1995, 74th Leg. R.S., ch. 76, § 14.50, 1995 Tex. Gen. Laws 840, 840 (currently

Tex. Penal Code Ann. § 32.32(a)-(b) (West 2011)).

The indictments alleged petitioner intentionally submitted a credit report of another person

and made materially false or misleading written statements on uniform residential loan applications

that he owned bank accounts in Wells Fargo Bank, when he did not, with the intent to obtain credit

or property of the value of $200,000 or more for himself. (01SHR at 133; 02SHR at 133) In May

2007, § 32.32(a) was amended to specifically include "(7) a mortgage loan," and § 32.32(b) was

amended to read, "[a] person commits an offense if he intentionally or knowingly makes a materially

false or misleading written statement to obtain property or credit, including a mortgage loan." *See*

Act of May 15, 2007, 80th Leg., R.S., ch. 286, § 5, 2007 Tex. Gen. Laws 557, 559.

Petitioner contends that the "trial court lacked jurisdiction to convict because the statute" in

effect at the time of the offenses "did not authorize criminal penalties for" making a false statement

to obtain a "mortgage loan," and that application of the amended version of the statute to his case

is a violation of the Ex Post Facto Clause.[5] (Pet. at 7; Pet'r Mem. at 1-5) Petitioner argues that the

amendment expressly criminalizes making a false statement to obtain a mortgage loan, that the state

"legislature is not presumed to have done a useless or foolish thing," and that, by amending the law,

---

[5]Petitioner also claims application of the 2007 version of the statute violates the state
constitution. (Pet'r Mem. at 3, 5) However, violations of the state constitution are not cognizable
in federal habeas review. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011). Thus, the claim is
not addressed.

the legislature intended to change the law. (Pet'r Mem. at 4) Although somewhat unclear, it appears petitioner is attempting to argue that by amending the statute to include "a mortgage loan" as a type of "credit" under the statute, the legislature intended to create a wholly new type of crime based on acts that were previously noncriminal.

Because the Texas Court of Criminal Appeals denied relief without written order, this court may presume that the court rejected petitioner's argument and that petitioner's actions of intentionally making false and misleading statements on loan applications to obtain mortgage loans clearly fell within the purview of the statute in effect at the time of the offenses. The amendment to the statute does not establish that § 32.32(a) was an exhaustive list of the types of "credit" falling within the purview of the statute or that petitioner's actions were not an offense under former § 32.32(a) and (b). The fact that the state legislature later amended the statute to clarify that "a mortgage loan" is included in the type of "credit" under the statute does not mean that the statute did not cover making false or misleading written statements to obtain a mortgage loan prior to the amendment. *See Bates v. United States*, 522 U.S. 23, 32 (1997) (holding amendment to statute defining offense of knowingly and willfully misapplying student loan funds, to specifically include failure to refund funds, did not establish that the deliberate failure to return Guaranteed Student Loan (GSL) funds, without an intent to defraud, was not previously an offense) ; *United States v. Alpers,* 338 U.S. 680, 681- 84 (1950) (rejecting the defendant's argument that a subsequent amendment to include motion pictures within the reach of an obscenity statute "evidenced an intent that obscene matter not specifically added was without the prohibition of the statute" and concluding that the amendment more likely indicated that Congress wanted to make "doubly sure that motion-picture film was within the Act, and was concerned with nothing more or less"); *United States v. Hockings,*

129 F.3d 1069, 1072 (9th Cir. 1997) ("Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases. Thus, an amendment to a statute does not necessarily indicate that the unamended statute means the opposite." (quotation marks and citation omitted)).  Nor does petitioner provide citation to state law authority that former § 32.32 excluded making false or misleading written statements to obtain a mortgage loan.  This argument lacks merit.

### 2. Was Petitioner Denied a Fundamentally Fair Trial Through Cumulative Trial Errors

Petitioner contends his trial was rendered fundamentally unfair because the trial court–

(1)     held an *ex parte* hearing to quash his subpoenas in violation of his rights to confront witnesses, to be present at all phases of trial proceedings, and to present a defense;

(2)     disallowed the defense from referring to chapter 156 of the Texas Finance Code in violation of his right to present a defense; and

(3)     deemed section IX of the uniform residential loan application irrelevant in violation of his right to present a defense.

(Pet. at 7; Pet'r Mem. at 6-18)

Petitioner claims "the trial court held an *ex parte* hearing to quash his subpoenas," in violation of his "Six [sic] Amendment right to confront, his right to be present at all phases of trial proceedings and his right to present a defense on his behalf."  (Pet'r Mem. at 6-10)  The record reflects petitioner requested issuance of 25 plus witness subpoenas and requests for subpoena duces tecum. (Clerk's R., Cause No. 1054601R, vol. 2, at 321-92; RR, vol.4 at 33)  On June 20, 2007, the state moved to quash the subpoenas for eight witnesses, duces tecum, on the grounds that–

> The language of these subpoenas is vague, ambiguous and unintelligible.
> Additionally, these subpoenas are overly broad and most of the records requested are

irrelevant to the case at bar. Further, by requiring the witnesses to comply with these subpoenas it would cause an undue burden upon each witness.

(*Id.* at 267) The trial court signed an order releasing Joy Bates, Jerry Alexander, Kathy Domlorsiki, Florence Alexander, Najullah Ison, Earnestine William, Mazvita Matsalele, and Jody Yancy from obligations of complying with the subpoenas on the same date. (*Id.* at 268)

All criminal defendants have a constitutional right to compulsory process under the Sixth Amendment. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982). Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973); *Washington v. Texas,* 388 U.S. 14, 19 (1967). However, this right, like most, is not absolute. A violation of a defendant's Sixth Amendment rights occurs only where he can show that the witness would have provided evidence that is material and favorable to his defense. *See Valenzuela-Bernal,* 458 U.S. at 867; *Washington,* 388 U.S. at 23. *See also United States v. Rubin,* 836 F.2d 1096, 1101-02 (8th Cir. 1988) (no Sixth Amendment violation in quashing subpoena where defendant failed to show evidence would be favorable).

The record does not support petitioner's assertion that the trial court conducted an *ex parte* hearing or "in chamber meeting," outside of his presence. Instead, it appears the court granted the state's motion to quash on the motion itself. (Clerk's R, Cause No. 1054601R, vol. 2, at 324-31, 341, 348-49, 355-56, 358-59) Further, the record reveals, of the eight prospective witnesses, three were served and five no longer worked for Legacy Financial and/or were unable to be located. (*Id.* at 354-55, 364, 367) Of the three served, petitioner called one, Jerry Alexander, a senior underwriter

9

at Legacy Financial, to testify as a defense witness. Petitioner cannot establish a violation of the right to compulsory process merely by showing he was deprived of the remaining seven prospective witnesses' testimony. Petitioner wholly fails to show the witnesses' testimony would have been both material and favorable to his defense; thus, he cannot show the state courts' rejection of the claim is contrary to, or an unreasonable application, of Supreme Court law on the issue.

Petitioner also claims he was not allowed to refer to chapter 156 of the Texas Finance Code or section IX of the uniform residential loan application in violation of his right to present a defense. (Pet'r Mem. at 10-18) Section 156.406 of the Texas Finance Code requires a person who acts as a residential mortgage loan originator to be licensed. According to petitioner, "the alleged residential loan applications were illegally originated by non-license[d] loan officers," contrary to § 156.406. He asserts that had the jury been allowed to see Defense Exhibits 1-7 ("Licensee and Registrant Info Searches") and had he been permitted to refer to the statutory provision, the jury would have been "able to see evidence that truthfully shows that the petitioner nor anyone in the branch he supervised under the complainant was licensed nor were applications pending for licensing" and could have possibly viewed Liberty Financial's owner's testimony as false and misleading. (RR, vol. 4, at 135 & vol. 7, Binder 4 of 4, Def't Ex. 1-7)

On the other hand, section IX of the uniform residential loan application, entitled "Acknowledgment and Agreement," provides in relevant part:

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) **the information provided in this application is true and correct as of the date set forth opposite my signature** and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages . . . and/or criminal penalties including, but not limited to, fine or imprisonment or both under

10

the provisions of Title18, United States Code, Sec. 1001, et. seq,. . . .

(Pet'r App, Ex. 15 at 3) (emphasis added)

On direct-examination of Jerry Alexander, petitioner had Alexander read section IX and attempted to question him how there could possibly be a false statement on petitioner's part when the application was not signed and therefore not in compliance with the Real Estate Settlement Procedure Act (RESPA). (Pet'r Mem. at 16) The state objected on the grounds that a violation of 156.406 of the Finance Code and/or Title § 1001 of the United States Code was irrelevant to whether petitioner committed an offense under § 32.32 of the Texas Penal Code, and the trial court sustained the objection. (RR, vol. 5, at 66-73)

A review of the trial testimony reveals that, although the trial court sustained the state's objections, petitioner nevertheless was able to elicit testimony regarding licensure, or lack thereof, of Legacy Financial as a broker and of the loan officers to originate loans and that one of the loan applications introduced into evidence was not dated as required by section IX. (RR, vol. 7, Binder 1 of 4, Ex. 1-54) Moreover, evidentiary rulings or rulings limiting the scope of cross-examination by a state trial court are generally not cognizable on federal habeas review, and, even if this court were to address the issue, the trial court's rulings were not of such magnitude or so egregious as to render petitioner's trial fundamentally unfair. Petitioner's questioning regarding the legality of the loan applications was not crucial, critical or highly significant to whether petitioner committed the offenses as defined in the state penal statute.

### 3. Was Petitioner Denied Equal Protection of Law During Voir Dire?

Petitioner, who is African-American, claims the state unconstitutionally used peremptory strikes to remove the only prospective African-American juror, venireperson Hickerson, number 14,

based on race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). (Pet'r Mem. at 19-25) The

law governing *Batson* claims is clearly established. The Equal Protection Clause prohibits

purposeful racial discrimination in the use of peremptory strikes of prospective jurors. *Id.* at 89. In

*Batson*, the Supreme Court outlined the methodology for evaluating a claim that jurors were

improperly stricken based on their race. Initially, the defendant must make a prima facie showing

that the challenged strike has been employed in a racially discriminatory manner. Once this showing

has been made, the prosecutor must articulate race-neutral selection criteria. This step does not

demand an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768

(1995). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason

offered will be deemed race neutral." *Id.* The district court then must determine whether the

defendant has established purposeful racial discrimination. *Id.* at 93-98.

> The state prosecutor explained the peremptory strike as follows:

>> Your Honor, on Number 14, Mr. Hickerson, we have information that he has been booked into the Tarrant County Jail back in 1988 on some Class C misdemeanors. I believe may have been a traffic citation, but he has been in jail, incarcerated.
>> He also advised on voir dire that he had been selected as a juror in another case, in a child case, but there was no punishment, which indicates that he probably – the jury in that case probably found the defendant not guilty.
>> And so for those, we felt it necessary to exercise a peremptory challenge.

(RR, vol. 3, at 133-34)

> Based on the state's explanation, the trial court found petitioner had failed to make a prima

facie showing that the strike was made for non-race-neutral reasons. (*Id.* at 134) Then and now,

petitioner presents no evidence to refute the state's given reasons, which are racially neutral. Instead,

he argues that the state did not exercise peremptory strikes on two similarly situated nonblack jurors,

12

venirepersons Campbell and Thomason (number 34). "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El II,* 545 U.S. 231, 241 (2005). Thomason, number 34, did not serve on the jury. (*Id.* at 132) Campbell did serve, but she had never been charged with a crime or arrested. (*Id.* at 98-99) On this record, the state court's application of *Batson* was not unreasonable.

### 4. Was Petitioner Denied Effective Assistance of Counsel on Appeal

Petitioner claims his counsel on appeal was ineffective by failing to raise the claims presented in this federal petition and to properly argue his sufficiency-of-the-evidence claims. (Pet'r Mem. at 26-30) A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standards set forth in *Strickland v. Washington.* 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). The question is whether petitioner has shown that appellate counsel's

13

failure to raise specific issues worked to his prejudice–*i.e.,* that but for counsel's errors he would have prevailed on his appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991).

Petitioner has failed to raise a meritorious claim in this petition, and his claim that counsel should have presented a "proper factual and legal insufficiency argument" does not avail him. In appellant's brief, counsel argued the evidence was legally and factually insufficient to show the amount of loss alleged in each indictment. (Appellant's Br. at 13-16) Petitioner claims counsel should have argued that the "incumbent" applications do "not have any of the alleged false statements on them as charged," that none of the typed applications "have petitioner's signature and date on them to warrant false representation of the facts withheld by petitioner," that "in both indictments . . . count one was not proved because the element of 'written' false statement cannot be proved by submitting another document, namely:  the Residential Mortgage Credit Report," that "in both indictments the element 'to obtain property or credit' was not proved because the petitioner attempted to obtain (2) two mortgage loans" and § 32.32 of the Texas Penal Code in effect when he committed the offenses "did not list mortgage loan as a credit," and that "the alleged confession does not state in verbage [sic] that the petitioner knowingly and intentionally made false statements" on the loan applications. (Pet'r Mem. at 29)

Counsel responded to petitioner's allegations in an affidavit filed in the state habeas proceedings as follows:

> The Applicant was convicted of multiple counts in 2 separate indictments of making false statements of a fiduciary nature and enhanced with prior felony convictions to habitual offender punishment on each Count. Initially I was appointed as stand-by counsel to assist the Applicant at his trial in which he represented himself. During the close of the guilt/innocence/commencement of the punishment phase the Applicant requested to c[e]ase self-representation and allowed counsel to represent him fully for the final portions of his trial. By that time the damage had

14

already been done because of self-representation and the refusal of the Applicant in representing himself to take the advice given to him, after he had requested it. Prior to trial plea bargain negotiations were transmitted to counsel by the DA and I transmitted them to the Client in a timely manner and the Client refused all pretrial offers. There were no plea negotiations once the trial began. Following the trial I made appropriate motions, objections and requests and opposed adverse evidence offered by the State and engaged in jury arguments beneficial to the Applicant at his trial. To that end I urged double jeopardy complaints which were granted on all but 2 of the counts.

I raised all meritorious preserved issues on the Applicant's appeal. I transmitted to the Applicant copies of all briefs, motions, pleadings and correspondence. I raised all non-frivolous issues, preserved issues on appeal. I did not raise the issues on appeal claimed by Applicant in this application because I believed that they were flawed and legally unsupportable. I informed the Applicant when his convictions were affirmed and was informed that he desired to once again represent himself on petitions for discretionary review. I agreed to his wishes and took no further action on the Applicant's behalf. The State filed petitions for discretionary review and I did not file a response to them in keeping with the Client's request. The cases were abated by the Court of Criminal Appeals and a hearing was held before the trial judge who replaced me with another attorney, Lisa Mullen, at the Client's request, who undertook representation of the Appellant with regard to filing and responding to petitions for discretionary review. Since that time the only other communication I received from the Applicant was the filing of the writ to which I am responding herein. I do not believe that I provided ineffective assistance of counsel as alleged by the Applicant. It should be noted that the Court of Criminal Appeals of Texas overruled the Court of Appeals and reinstated the 4 dismissed counts after granting the State's Petitions for Discretionary Review.

(07SHR at 370)

A person commits an offense under former § 32.32 if he "intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit for himself or another." Having reviewed the record, *in toto*, the evidence was sufficient to support petitioner's convictions. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Petitioner submitted loan applications and other documentation containing false and misleading information to obtain loans in the amount of $680,000 and $544,000 in his mortgage fraud scheme. The jury could have inferred petitioner's

15

intent through those actions. *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996). Thus, petitioner cannot show that he was prejudiced by counsel's choice of issues or that his appeal, with reasonable probability, would have had a different outcome had counsel raised the matters presented in this petition or additional sufficiency-of-the-evidence arguments. Thus, the state courts' denial of the claim is not an unreasonable application of *Strickland*.

## II. RECOMMENDATION

Petitioner's petition for writ of habeas corpus should be DENIED.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until July ____16____, 2013. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until July ___16___, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June ___25___, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17